CITY OF PERRYSBURG/State of Ohio, Appellee,

v.

MILLER, Appellant.

[Cite as *Perrysburg v. Miller,* 153 Ohio App.3d 665, 2003-Ohio-4221.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–02–040.

Decided Aug. 8, 2003.

666

P. Martin Aubry, Perrysburg City Prosecutor, and Cynthia B. Smith, Assistant City Prosecutor, for appellee.

Konrad Kuczak, for appellant.

---

KNEPPER, Judge.

{¶ 1} This is an appeal from the judgment of the Perrysburg Municipal Court, which, following a jury trial, found appellant, D.W. Miller, guilty of failure to comply with the lawful order of a police officer, in violation of R.C. 2921.331(A), a misdemeanor of the first degree, and guilty of operating a commercial vehicle in violation of an out-of-service order, in violation of R.C. 4506.04(A)(2), a misdemeanor of the first degree. The trial court additionally found appellant guilty of operating a vehicle without displaying a 2002 IFTA sticker, in violation of R.C. 5728.02, a minor misdemeanor. Appellant was sentenced to 180 days in jail on each of his convictions as to R.C. 2921.331 and R.C. 4506.04, to be run concurrently, 165 days of which were suspended, and he was fined $500 as to each count. Appellant was also ordered to pay a fine of $100 with respect to his failure to display an IFTA sticker. Appellant was placed on probation for 36 months. For the following reasons, we affirm in part and reverse in part appellant's convictions and the trial court's judgment.

{¶ 2} Appellant's convictions arose as a result of a commercial vehicle inspection, which occurred on February 28, 2002, and was conducted by Motor Carrier Enforcement Inspector Harold A. Emnett, who was with the State Highway Patrol and Department of Public Safety. Appellant was driving a tractor-trailer combination, with two trailers, when he was stopped for a safety inspection in the McDonald's parking lot on Dutch Road in Lucas County, Ohio. Eventually, appellant was arrested, and the truck and trailers were towed by VJ's Towing to VJ's storage lot in Perrysburg, Ohio. Emnett ultimately placed appellant's tractor-trailer out of service due to the load's not being properly secured. Additionally, appellant was given citations by the Ohio State Highway Patrol

("Highway Patrol") for gross overload of a motor vehicle and for failing to display a 2002 IFTA sticker. Despite these violations, and without making the repairs necessary to bring his truck into compliance, appellant allegedly drove his truck off VJ's lot in Wood County, Ohio, and onto State Route 25.

{¶ 3} Appellant appeals his convictions and raises the following assignments of error:

{¶ 4} "1. The trial court committed prejudicial error by overruling the appellant's motion to suppress evidence.

{¶ 5} "2. The trial court committed prejudicial error by overruling appellant's Rule 29 directed to the 'out of service order.'

{¶ 6} "A. The state failed to prove a prima facie case that MCEI Emnett possessed the authority to issue an 'out of service' order.

{¶ 7} "B. The state failed to prove a prima facie case that MCEI Emnett issued a lawful 'out of service' order.

{¶ 8} "3. The trial court committed prejudicial error by overruling appellant's Rule 29 motion as to the 'failure to comply' charge.

{¶ 9} "4. The trial court committed prejudicial error by not granting appellant's motion for a bill of particulars and precluded appellant from demonstrating that the prosecution of appellant for a violation of ORC § 2923.331 [sic, 2921.331] was an unlawful attempt to impose multiple convictions for the same conduct.

{¶ 10} "5. Convicting appellant of violating both ORC § 2923.331 [sic, 2921.331] and ORC § 4506.04 is unlawful.

{¶ 11} "6. The trial court committed prejudicial error in overruling the appellant's Rule 29 motion as to the IFTA sticker charge.

{¶ 12} "7. The trial court committed prejudicial error by admitting State's Exhibit 16 (the VHS recording of the events following the traffic stop)."

{¶ 13} Appellant's first assignment of error concerns his motion to suppress, which was denied by the trial court. Appellant argues that the stop of his vehicle and its removal to Wood County violated his Fourth Amendment rights. With respect to the stop, appellant argues that it was unconstitutional insofar as it was not authorized by Ohio Adm.Code 4901:2–5–13. Appellant further argues that the warrantless inspections allowed by R.C. 5503.34 and Ohio Adm.Code 4901:2–5–13 are unconstitutional because the discretion of the inspectors is not limited with respect to "time, place, and scope," as required by *New York v. Burger* (1987), 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601.

{¶ 14} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions

and evaluate the credibility of a witness. *State v. Smith* (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583. This court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Davis* (1999), 133 Ohio App.3d 114, 117, 726 N.E.2d 1092. Applying those facts, we must then independently determine as a matter of law whether the facts meet the appropriate legal standard. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

{¶ 15} R.C. 5503.34 provides, in part, that "[u]niformed employees of the commercial motor vehicle safety enforcement unit may stop commercial motor vehicles for the exclusive purpose of inspecting such vehicles to enforce compliance with orders and rules of the public utilities commission * * *." The United States Supreme Court, however, has held, in part, that a statute providing for warrantless searches must limit the discretion of the inspecting officers in "time, place, and scope." *New York v. Burger* (1987), 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601, citing, *United States v. Biswell* (1972), 406 U.S. 311, 315, 92 S.Ct. 1593, 32 L.Ed.2d 87.

{¶ 16} Clearly, R.C. 5503.34, in and of itself, places no limitations on the discretion of the safety inspectors and "conveys virtually complete discretion on the motor vehicle safety enforcement unit in deciding which trucks it will stop and when they may be stopped." *State v. Landrum* (2000), 137 Ohio App.3d 718, 739 N.E.2d 1159. In *Landrum*, the court held that absent compliance with Ohio Adm.Code 4901:2–5–13(C), the random detention and inspection of a vehicle, pursuant to R.C. 5503.34, is unconstitutional. See, also, *State v. Van Hoose* (Dec. 15, 2000), Montgomery App. No. 18287, 2000 WL 1838764. Ohio Adm.Code 4901:2–5–13(C) states:

{¶ 17} "(C) Authorized employees of the commission's transportation department shall utilize the following criteria in determining which documents, motor vehicles, and cargo to inspect and which employees of an offeror or motor carrier to interview: * * *

{¶ 18} "(5) Any uniform statistical selection procedure, such as every fifth motor vehicle or every motor vehicle entering an inspection site * * *."

{¶ 19} At the suppression hearing, Emnett testified that on February 28, 2002, when he decided to conduct a commercial vehicle inspection, he first chose the number 3 and then began counting commercial vehicles that passed him on U.S. 24. Appellant's truck was the third commercial vehicle to pass Emnett and, thus, was selected by Emnett to be inspected. Richard McGrath, a doctor of statistics, testified on appellant's behalf that a "uniform statistical selection procedure" was comparable in the field of statistics to a "systematic sample." McGrath described a traditional systematic sample as follows: "the number of items is predetermined and you have a list of the entire population that will be sampled from, and

then a starting point is randomly selected." McGrath also testified that the number that is selected for the sampling is decided before the sampling is done.

{¶ 20} The trial court held that Emnett implemented a uniform statistical selection procedure by selecting the number 3 before beginning to count the commercial vehicles that drove past him on U.S. 24. We agree. Emnett's preselection of the number 3 provided him with a neutral criterion to use when selecting a vehicle to inspect and complies with one of the two examples of a "uniform statistical selection procedure" as specified by Ohio Adm.Code 4901–2–5–13(C)(5).

{¶ 21} Appellant, however, argues that despite Emnett's preselection of the number 3, Emnett still had complete discretion as to time, place, and scope. As such, appellant argues that the search and seizure of his truck was unconstitutional. We disagree and find that the vehicle inspection was properly limited in time insofar as it was conducted during Emnett's shift. We also find that it was properly limited in scope insofar as Emnett implemented a uniform statistical selection procedure to choose appellant's vehicle. We further find that the stop was properly limited as to location insofar as appellant's truck entered an "inspection site," as required by Ohio Adm.Code 4901–2–5–13(C)(5).

{¶ 22} Ohio Adm.Code 4901–2–5–13(C)(5) specifies that "every fifth motor vehicle or every motor vehicle entering an inspection site" can be selected. Appellant argues, however, that "inspection site" is not defined and, therefore, there was no limitation on Emnett's discretion as to place. Although "inspection site" is not defined, we find that, pursuant to R.C. 1.49, in order to determine the intention of the legislature, we may consider "[t]he common law or former statutory provisions, including laws upon the same or similar subjects." The former version of Ohio Adm.Code 4901–2–5–13(C)(5) stated, in part, that any uniform statistical selection procedure "shall be used when operating at a * * * temporarily fixed inspection location on public property * * *." "As used in this rule, 'temporarily fixed inspection location' shall include a portion of a public highway being patrolled by employees of the commission's transportation department." Although no longer included in the Ohio Administrative Code, we find this language instructive as to what was intended by "inspection site." Insofar as Emnett conducted his uniform statistical selection procedure while patrolling a portion of public highway, to wit U.S. 24, we find that Emnett did not have unfettered discretion as to the location of the inspection site.

{¶ 23} Appellant additionally argues in his first assignment of error that the impounding of his vehicle was unconstitutional. We disagree. Appellant's truck was towed only after he had been arrested for obstruction of official business and for failure to comply with a lawful order of an officer. According to Trooper Robert Ashenfelter, when subjects are taken into custody and no longer

on the scene, a decision is made whether to tow the vehicle to protect the vehicle, its contents, the property owner's interests, and the state of Ohio from liability. Ashenfelter testified that appellant's vehicle was towed from McDonald's parking lot to VJ's secured storage lot "[b]ecause we're not going to post a guard around it 24 hours a day to watch it and the owner of the vehicle was not there or a representative of the company." Based on the facts and Ashenfelter's testimony, we find that the impounding of appellant's truck was routine, authorized by standardized procedures, and necessary from a security standpoint. See *Colorado v. Bertine* (1987), 479 U.S. 367, 375–376, 107 S.Ct. 738, 93 L.Ed.2d 739.

{¶ 24} Based on the foregoing, we find appellant's first assignment of error not well taken.

■ {¶ 25} Appellant argues in his second assignment of error that the trial court erred in overruling appellant's Crim.R. 29 motion for a directed verdict as to charge of violating an out-of-service order. Specifically, appellant argues that (1) the state failed to prove a prima facie case that Emnett possessed the authority to issue an out-of-service order, and (2) the state failed to prove a prima facie case that Emnett issued a lawful out-of-service order.

{¶ 26} Pursuant to R.C. 5503.34, the Superintendent of the Highway Patrol may appoint staff to the commercial motor vehicle safety enforcement unit to "stop commercial motor vehicles for the exclusive purpose of inspecting such vehicles to enforce compliance with orders and rules of the public utilities commission * * *." As evidenced by state's exhibit No. 1, Emnett was appointed by the Superintendent of the Ohio State Highway Patrol, by virtue of the authority vested by R.C. 5503.34, to the Commercial Motor Vehicle Safety Enforcement Unit. Ohio Adm.Code 4901:2–5–07 states that "employees of the state highway patrol designated by the superintendent to conduct commercial vehicle inspections, may declare 'out of service' * * * [a]ny motor vehicle which by reason of its mechanical condition or loading would likely cause an accident or breakdown * * *." Accordingly, we find that the prosecution established that Emnett was authorized, pursuant to his appointment by the Superintendent of the Ohio State Highway Patrol, and the applicable statutory and Administrative Code sections, to declare appellant's truck out of service due to his load's being improperly secured.

■ {¶ 27} Appellant, however, additionally argues that the out-of-service order issued by Emnett was unlawful insofar as the sticker Emnett affixed to appellant's truck failed to contain a list of necessary repairs. Further, although the out-of-service sticker stated that appellant was to "[c]orrect all violations as noted on the OSP inspection report," appellant argues that he was never provided the inspection report and, therefore, was not clearly and unequivocally notified

what behavior was prohibited by the out-of-service order, thereby denying him due process. We disagree.

{¶ 28} With respect to placing a vehicle "out of service," Ohio Adm.Code 4901:2–5–07(D) states that "[v]ehicles declared 'out of service' may be marked with an appropriate sticker, which shall not be removed until the vehicle is no longer out of service." Additionally, Section 396.9, Title 49, C.F.R., states:

{¶ 29} "(c)(1) Authorized personnel shall declare and mark 'out of service' any motor vehicle which by reason of its mechanical condition or loading would likely cause an accident or a breakdown. An 'Out of Service Vehicle' sticker shall be used to mark vehicles 'out of service'.

{¶ 30} "(c)(2) No motor carrier shall require or permit any person to operate nor shall any person operate any motor vehicle declared and marked 'out of service' until all repairs required by the 'out of service notice' have been satisfactorily completed. * * * "

{¶ 31} In this case, while at VJ's lot, and after inspecting appellant's truck, Emnett declared the truck out of service due to an insecure load. Specifically, Emnett determined that the size and number of chains being used to secure the steel coils on appellant's trailers were insufficient based upon the weight of each coil. Emnett testified that, in the presence of Andy Williams, an employee at VJ's Towing, he placed out-of-service stickers on the driver's side of each trailer. Emnett stated that he filled out each sticker with the inspection report number, his signature, and the date of the inspection. Emnett then went to the Maumee Police Department and, in the presence of Trooper Ashenfelter, notified appellant that his truck was out of service due to the load securement. Emnett testified that he told appellant that the load needed to be "properly secured." Emnett also testified that he knew that appellant understood the nature of the out-of-service order because appellant "started arguing with [Emnett] about the securement of the coils because [appellant] was afraid he was going to damage the coils." Emnett further testified that the written inspection report was not completed until the following day because he needed additional information from the carrier before completing his report. However, once it was complete, Emnett testified that the report was sent to the motor carrier.

{¶ 32} Trooper Ashenfelter also testified that appellant was notified regarding the nature of the out-of-service order. Specifically, Ashenfelter testified that Emnett instructed appellant that he needed to get "a multitude of things" taken care of before driving his truck, including properly securing his load, which did not have enough chains or straps on the coils to keep them securely in place. Ashenfelter testified that appellant's response to Emnett was that, with respect to the truck's being overweight, "all he needed to do was separate the trailers to make it legal," and with respect to the load securement, "he could have somebody

bring chains up," but he did not like to because the chains "would damage the steel coils." Ashenfelter also testified that Trooper Charles Grizzard told appellant that "everything needed to be brought up per the inspectors to have everything certified before he could drive it, whether it be the chains and everything else." According to Ashenfelter, appellant responded to Grizzard that "he knew what he had to do at that point."

{¶ 33} Ashenfelter further testified that after appellant was released from the Maumee Police Department, appellant came to the Highway Patrol post to get a release form, an HP60, to get his truck released from VJ's storage lot. Appellant presented his 2002 IFTA sticker and was issued an HP60, which would, according to Ashenfelter, enable appellant to "make any necessary corrections to the vehicle before driving it." At the time the HP60 was being issued, Ashenfelter testified that he again told appellant that "he needed to make the load legal and he needed to have it properly secured." Appellant responded to Ashenfelter that "my buddy's out there in a pickup truck and I've got chains and stuff to secure it from there."

{¶ 34} Trooper Grizzard also testified that he informed appellant regarding the nature of his vehicle violations and the reasons for its being placed out of service. Grizzard testified that he told appellant that he "was going to issue [appellant] a citation for gross overload of a motor vehicle, failure to display an IFTA violation, and also that he needed to take care of the out-of-service violations that were going to be explained to him by Inspector Emnett." Grizzard informed appellant that "the vehicle had to be made legal for weight, first of all, which was the vehicle had to be in compliance with the 80,000 pounds of gross weight that any tractor trailer is afforded without a special hauling permit, that the * * * 2002 IFTA sticker had to be displayed in the truck and that any out-of-service orders that he was going to be issued had to be taken care of." Grizzard also told appellant that "any type of deviation from that would be grounds for failure to comply with [Grizzard's] order."

{¶ 35} With respect to the HP60, Grizzard testified that in order to obtain an HP60, appellant "had to show the IFTA sticker and comply with all [Grizzard's] previous orders, which [were] (1) to make the vehicle of legal weight, and (2) to make sure all violations of the motor carrier regulations were taken care of, specifically the out-of-service ones, which would be the chains on the coils." Grizzard further testified:

{¶ 36} "The HP60 was just going to be to show the IFTA sticker. And then, when he took the HP60 down to VJ's, he would have shown that he has complied with one aspect of that and that he—the reason that he went then and got it was so he didn't have to go back and forth, which I respect. That was a lot of driving all the way from Perrysburg out to Swanton.

{¶ 37} "But he was going to have to still comply with the other orders, which was (1) break the trailers apart and the [inaudible] weight, and (2) fix the trailer, i.e., the chains.

{¶ 38} "That was the whole purpose of having it—it was a receipt showing, from the highway patrol, that we have made him comply in order to make it legal to drive on the road."

{¶ 39} Andy Williams testified that he saw Emnett place the out-of-service stickers on the trailers while at VJ's lot. Williams also testified that he told appellant, at approximately 1:30 a.m. on March 1, 2002, when appellant came to pick up his truck, that he "needed to split the trailers to make it legal and chain his coils on there." Williams also told appellant that "he could bring the truck around the front and separate the trailers." Williams suggested this because he did not want to wait around all night for appellant to return for the other trailer, which Williams would have had to do had the second trailer been left in the secured lot. According to Williams, appellant sat in the cab of his truck for 10–20 minutes while letting the air build up on his truck, never got out to look in the trailers or at his load, and never secured the coils of steel with additional chains. After 10–20 minutes, appellant drove out of the lot and within a minute and a half, without having split the trailers, had pulled out onto State Route 25, heading south.

{¶ 40} Based on the foregoing, we find that appellant was not denied due process by the issuance of the out-of-service order. According to Emnett, the out-of-service stickers clearly identified the inspection report number, which contained the specific violation information, Emnett's name, and the date of the offense. We further find that Emnett completed the written inspection report within a reasonable amount of time after placing appellant's truck out of service. Moreover, based on the testimony of the witnesses, we find that even without being handed the written report, appellant was clearly and unequivocally notified regarding the nature of the out-of-service order and what steps had to be taken to rectify the violations. Accordingly, we find appellant's second assignment of error not well taken.

{¶ 41} Appellant argues in his third assignment of error that the trial court committed prejudicial error by overruling appellant's Crim.R. 29 motion with respect to the "failure to comply" charge. Specifically, appellant argues that because there was no lawful out-of-service order, Trooper Gizzard's order to appellant to rectify the out-of-service order before operating his vehicle was not lawful. Additionally, appellant argues that "the unconditional written release for appellant's vehicle renders any oral admonitions ambiguous and raises a reasonable doubt as to the existence of the 'order' itself." We disagree.

{¶ 42} As discussed above, we find that appellant's vehicle was lawfully placed out of service due to an improperly secured load. Insofar as R.C. 4506.15(G) prohibits persons from violating an out-of-service order, we find that a state trooper has the authority to enforce an out-of-service order. We also find that, in addition to being ordered to rectify the load violation associated with the out-of-service order, appellant was ordered by Grizzard not to operate his truck until the overweight violation had been rectified. Neither violation was rectified by appellant prior to driving his truck on State Route 25. We further find that appellant's truck was released pursuant to an HP60 form with the clear instruction that prior to driving his truck, he must rectify the overweight and insecure load violations. Moreover, we find that appellant represented that he knew what needed to be done and was prepared to do so.

{¶ 43} Having found that appellant failed to comply with the lawful order of a police officer, we find that the trial court did not err in overruling appellant's Crim.R. 29 motion for acquittal on the "failure to comply" charge. Appellant's third assignment of error is therefore not well taken.

{¶ 44} In his fourth assignment of error, appellant argues that the trial court committed prejudicial error by not granting appellant's motion for a bill of particulars. Appellant argues that because he was not provided the identity of the police officer with whose order appellant had failed to comply, the substance of the order, or the method by which it was communicated to appellant, appellant erroneously proceeded under the belief that the state was going to attempt to convert Inspector Emnett into a police officer. Appellant asserts that this lack of notice and information interfered with his ability to file appropriate motions to dismiss.

{¶ 45} "In a criminal prosecution the state must, in response to a request for a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possesses such information." *State v. Sellards* (1985), 17 Ohio St.3d 169, 17 OBR 410, 478 N.E.2d 781, syllabus. However, the Ohio Supreme Court noted that the purpose for giving a bill of particulars is "to elucidate or particularize the conduct of the accused," but not "to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Sellards* at 171, 17 OBR 410, 478 N.E.2d 781. Additionally, the Ohio Supreme Court has held that "[t]he purpose of the bill of particulars is to inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." *State v. Fowler* (1963), 174 Ohio St. 362, 364, 22 O.O.2d 416, 189 N.E.2d 133.

{¶ 46} In response to appellant's request for a bill of particulars in this case, the state replied that the complaint "adequately provided defense counsel with

the specific nature of the offense, the date of the offense, and the specific place of the offense." The complaint in this case states that appellant, "on or about the 1st day of March, 2002, did knowingly fail to comply with a lawful order of a police officer. To wit: did drive a comm. vehicle after being order[ed] not to until repairs were completed." Trooper Grizzard signed as "complainant."

{¶ 47} We find that appellant was not prejudiced by the trial court's denial of appellant's request for a bill of particulars insofar as the complaint adequately notified appellant regarding the exact nature of the charges against him, thereby enabling him to prepare for his defense. Accordingly, we find that the trial court did not err in denying appellant's request. Appellant's fourth assignment of error is therefore not well taken.

■ {¶ 48} Appellant argues in his fifth assignment of error that it was plain error for the trial court to convict him of multiple offenses arising out of the same conduct. Specifically, appellant argues that it violates the Double Jeopardy Clause, as embodied in R.C. 2941.25(A), to convict him of both of the allied offenses of R.C. 2921.331 and R.C. 4506.04. Appellant failed to raise this issue in the trial court and therefore waived all but plain error in this regard. See *State v. Issa* (2001), 93 Ohio St.3d 49, 56, 752 N.E.2d 904.

{¶ 49} R.C. 2941.25 states:

{¶ 50} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 51} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 52} The Ohio Supreme Court has stated that "in order for two crimes to constitute allied offenses of similar import, * * * [t]he offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other." *State v. Logan* (1979), 60 Ohio St.2d 126, 128, 14 O.O.3d 373, 397 N.E.2d 1345, citing *State v. Donald* (1979), 57 Ohio St.2d 73, 11 O.O.3d 242, 386 N.E.2d 1341.

{¶ 53} We find that no such correspondence exists between R.C. 2921.331 and R.C. 4506.04. R.C. 2921.331(A) requires that there had to exist a lawful order of a police officer with which appellant failed to comply, whereas, to be convicted of R.C. 4506.04, there had to be an out-of-service order issued that appellant violated. Insofar as their elements do not overlap, we find that these two

statutory sections are by no means indivisible, even though they happen to apply to the same conduct in this case. This is not a situation where a violation of R.C. 2921.331 will result in a violation of R.C. 4506.04. See *Logan,* supra.

{¶ 54} Moreover, we note that Trooper Grizzard did not solely order appellant to make the necessary repairs pursuant to the out-of-service order; rather, Grizzard also ordered appellant to rectify the separate violation of gross overload of a motor vehicle prior to driving the truck. Additionally, as a condition to receiving an HP60 release of his truck, appellant was ordered to make all necessary repairs before driving it. Hence, we find that there were additional orders with which appellant failed to comply that were separate and apart from the out-of-service order.

{¶ 55} Based on the foregoing, we find that R.C. 2921.331 and R.C. 4506.04 are not allied offenses of similar import. We further find that, regardless of the existence of an out-of-service order, appellant failed to comply with the lawful order of a police officer, to wit, appellant operated his truck before rectifying the overweight violation ordered by Trooper Grizzard. Accordingly, we find that appellant has not demonstrated that plain error exists. Appellant's fifth assignment of error is therefore not well taken.

{¶ 56} In his sixth assignment of error, appellant argues that the trial court erred in overruling his Crim.R. 29 motion as to the IFTA sticker charge. The state responds that appellant failed to make a Crim.R. 29 motion with respect to the IFTA charge and, therefore, waived any issue on appeal.

{¶ 57} A party waives any error, absent plain error, as to sufficiency of the evidence by failing to timely file a Crim.R. 29 motion for acquittal. *State v. Roe* (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351; and *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894. Nevertheless, "[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic." *State v. Brown* (July 14, 2000), Montgomery App. No. 17891, 2000 WL 966161. Regardless of the standard used, "'a conviction based on legally insufficient evidence constitutes a denial of due process,'" *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652, and *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, and should therefore be overturned.

{¶ 58} Sufficiency of the evidence is a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of a crime. *Thompkins* at 386, 678 N.E.2d 541. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 59} Upon thoroughly reviewing the record in this case, we find that there is no evidence presented that appellant drove his truck in Wood County, Ohio, without displaying his 2002 IFTA sticker. Appellant clearly had such a sticker, insofar as he presented it at the time he requested an HP60 form releasing his vehicle. Williams was the only witness who could have testified whether he saw appellant's sticker displayed when appellant left VJ's Towing; however, the state never asked Williams about the IFTA sticker. Accordingly, we find that appellant's sixth assignment of error is well taken.

{¶ 60} In his seventh assignment of error, appellant argues that the trial court committed prejudicial error by admitting state's exhibit No. 16, which was the VHS recording of the events following the traffic stop in Lucas County, Ohio. Appellant argues that the state failed to establish that the recording was authentic, accurate, and trustworthy. Additionally, appellant argues that the material in the recording was highly inflammatory and prejudicial because appellant's behavior at the scene of the traffic stop constituted evidence of other bad acts. We disagree.

{¶ 61} Evid.R. 404(B) provides, in part, that "[e]vidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." We find nothing in the record to support appellant's assertion that the VHS recording was offered to prove appellant's character in order to show that he acted in conformity therewith when he violated an out-of-service order and failed to comply with the lawful order of an officer. We further find that Trooper Ashenfelter properly authenticated the recording.

{¶ 62} Nevertheless, assuming arguendo that the recording was offered to prove that appellant acted in conformity with his character, with respect to the charges in this case, we find that the publication of the recording to the jury was not prejudicial. All aspects of the incident that could be heard on the VHS recording had already been testified to by witnesses. As such, even if the recording was improperly given to the jury, appellant suffered no prejudice from its publication because the information contained therein was merely duplicative of the witnesses' testimony. We therefore find that any potential error by the trial court was harmless. Accordingly, we find appellant's seventh assignment of error not well taken.

{¶ 63} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial with respect to the convictions based on R.C. 2921.331(A) and R.C. 4506.04(A)(2). The judgment of the Perrys-

burg Municipal Court is therefore affirmed with respect to these convictions. We further find that appellant was prejudiced with respect to the conviction based on R.C. 5728.02. We therefore reverse appellant's conviction based on failure to display an IFTA sticker and vacate his sentence in this regard. Court costs of this appeal are assessed to appellant.

Judgment affirmed in part
and reversed in part.

HANDWORK, P.J., and PIETRYKOWSKI, J., concur.