[Cite as *State v. Sepulveda*, 2016-Ohio-7177.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  10-16-03

    v.

FERNANDO D. SEPULVEDA,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Celina Municipal Court
Trial Court No. 16CRB00012

Judgment Reversed and Cause Remanded

Date of Decision:  October 3, 2016

APPEARANCES:

    *Richard M. Delzeith* for Appellant

    *George E. Moore* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Fernando D. Sepulveda ("Sepulveda"), brings this appeal from the February 9, 2016, judgment of the Celina Municipal Court sentencing Sepulveda to an aggregate 12-month jail term after he was found guilty in a bench trial of Sexual Imposition in violation of R.C. 2907.06(A)(3), a third degree misdemeanor, Menacing in violation of R.C. 2903.22(A), a fourth degree misdemeanor, Resisting Arrest in violation of R.C. 2921.33(A), a second degree misdemeanor, and Assault in violation of R.C. 2903.13(A), a first degree misdemeanor.

*Relevant Facts and Procedural History*

{¶2} On the evening of January 5, 2016, through the early morning hours of January 6, 2016, H.K. was playing cards and drinking alcohol with three friends at her residence in Celina. Those playing cards with her included H.K.'s friend Jennifer Fischer, Sepulveda, and a man named Steven. Sepulveda's girlfriend was at H.K.'s residence earlier in the evening but she had gone home. According to H.K., Sepulveda was staying in her spare room and had been for a little over a week because he was otherwise homeless.

{¶3} At some point in the early morning hours of January 6, 2016, H.K. fell asleep on her recliner in the living room and Jennifer went to sleep on the living room couch. Later, Jennifer woke and saw Sepulveda, naked, performing oral sex

on a sleeping H.K. Jennifer stated that H.K. was definitely asleep, and that Sepulveda had H.K.'s pants and underwear all the way off in the recliner. Jennifer testified that when she saw what was going on she pushed Sepulveda off of H.K. and awoke H.K.

{¶4} H.K. indicated that she awoke with her pants down, realized what was going on, and then got a frying pan and chased Sepulveda into the spare room. H.K. stated that she struck Sepulveda with the pan. H.K. stated that she never consented to the sexual contact that evening, and that she had never had any sexual contact with Sepulveda before. After chasing Sepulveda into the spare room, H.K. then called the police who promptly responded.

{¶5} Celina Police Officers Patrolman Gabe Bartlett and Sergeant Taylor[1] were dispatched to the residence for a possible sexual assault. The officers spoke with Jennifer, H.K., and Sepulveda and took written statements from Jennifer and H.K. The officers also wore body cameras during their interactions.

{¶6} When Sepulveda spoke with the officers, he denied any wrongdoing, claiming that he had consensual sex with "Jennifer," though Sepulveda would later state at trial that he had mixed up the names. Based on the statements of H.K. and Jennifer, the officers arrested Sepulveda for Sexual Imposition.

---

[1] Sergeant Taylor's first name is actually not given in the transcript. It is similarly not included in the record, as the complainant was Patrolman Gabe Bartlett. Appellee's brief indicates that Sergeant Taylor's first name is Kent.

{¶7} Sepulveda gave the officers some difficulty as they attempted to handcuff him. In addition, once Sepulveda was handcuffed, Patrolman Bartlett attempted to assist Sepulveda with his shoes, but at that time Sepulveda lunged with his leg at Patrolman Bartlett. For these actions Sepulveda was charged with Resisting Arrest.

{¶8} It took both officers to get Sepulveda out of the residence. On the way out of the residence Sepulveda made multiple threats to Patrolman Bartlett. Sepulveda was charged with Menacing for making these threats.

{¶9} Then, as the officers were walking Sepulveda to a police cruiser, Sepulveda spit at Patrolman Bartlett. Patrolman Bartlett was not struck that he was aware. Sepulveda was charged with Assault based on the spitting action. A spit-hood was retrieved and placed on Sepulveda, and Sepulveda was transferred to the jail.

{¶10} On January 6, 2016, complaints were filed in the Celina Municipal Court alleging that Sepulveda committed Sexual Imposition in violation of R.C. 2907.06(A)(3), a third degree misdemeanor, Menacing in violation of R.C. 2903.22(A), a fourth degree misdemeanor, Resisting Arrest in violation of R.C. 2921.33(A), a second degree misdemeanor, and Assault in violation of R.C. 2903.13(A), a first degree misdemeanor. The assault charge specifically alleged that Sepulveda "did spit at a police officer after being arrested."

{¶11} Sepulveda pled not guilty to the charges and the case proceeded to a bench trial on February 9, 2016. At trial the State called Jennifer Fischer and H.K. in addition to Sergeant Taylor and Patrolman Bartlett. The State also entered into evidence the footage from the officers' body cameras.

{¶12} After the State rested, Sepulveda testified briefly, apologizing to the officers for his actions, which included the spitting. Sepulveda testified that he was intoxicated and "didn't know what [he] was doing." (Tr. at 99). However, he testified that he did not sexually assault H.K., that the sexual contact was consensual, and that he had a sexual relationship with H.K. in the past. He also testified that he had been living at the residence for several months, rather than merely a week, and that he had been helping H.K. with her bills.

{¶13} The court ultimately found Sepulveda guilty of all four counts against him, and ordered Sepulveda to serve maximum sentences on each count, consecutive to each other, for an aggregate 12-month jail sentence.[2] A judgment entry memorializing Sepulveda's convictions and sentence was filed February 9, 2016.

{¶14} It is from this judgment that Sepulveda appeals, asserting the following assignment of error for our review.

---

[2] Specifically, Sepulveda was sentenced to serve six months in jail on the Assault, three months in jail on the Resisting Arrest, two months in jail on the Sexual Imposition, and one month in jail on the Menacing, all consecutive to each other based on Sepulveda's extensive criminal history.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT COMMITTED PLAIN ERROR BY CONVICTING MR. SEPULVEDA OF ASSAULT UNDER OHIO REVISED CODE §2903.13(A), SINCE INSUFFICIENT EVIDENCE WAS INTRODUCED AT TRIAL TO PROVE ASSAULT BY DEFENDANT'S ACTION OF ALLEGEDLY SPITTING TOWARDS A POLICE OFFICER.**

**{¶15}** In his assignment of error, Sepulveda argues that the trial court erred by convicting him of Assault. Specifically, Sepulveda contends that there was insufficient evidence to establish that spitting at Patrolman Bartlett was a knowing attempt to cause physical harm such that it would satisfy the elements of R.C. 2903.13(A).[3]

**{¶16}** Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard,* 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

---

[3] Sepulveda does not challenge his convictions for Sexual Imposition, Resisting Arrest, or Menacing, therefore we will not address them.

{¶17} Notably, Sepulveda did not make a Crim.R. 29 motion for acquittal either at the close of the State's evidence or at the end of the trial, therefore he has waived all but plain error with regard to the sufficiency of the evidence. *State v. Gipson*, 3d Dist. Allen No. 1-15-51, 2016-Ohio-994, ¶ 17, citing *State v. Fugate,* 2d Dist. Montgomery No. 25782, 2014–Ohio–415, ¶ 20. However, "[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic." *Perrysburg v. Miller,* 153 Ohio App.3d 665, 2003–Ohio–4221, ¶ 57 (6th Dist.), quoting *State v. Brown,* 2d Dist. Montgomery No. 17891 (July 14, 2000). Regardless of the standard used, "a conviction based on legally insufficient evidence constitutes a denial of due process," and constitutes a manifest injustice. (Citation omitted.) *Thompkins,* 78 Ohio St.3d at 386–87; *State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 38

{¶18} In this case Sepulveda contests his conviction for Assault, which is codified in R.C. 2903.13(A), and reads, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶19} Physical harm to persons is defined in R.C. 2901.01(A)(3) as, "any injury, illness, or other physiological impairment, regardless of its gravity or duration." The phrase "physiological impairment" is not further defined in the Revised Code; however, courts have interpreted it through its plain everyday usage.

"The term 'physiological impairment' may, therefore, 'be defined as a damaging or lessening of a person's normal physical functioning.' " *State v. Vore*, 12th Dist. Warren No. CA2012-07-065, 2014-Ohio-1583, ¶ 17, *appeal not allowed*, 139 Ohio St.3d 1486, 2014-Ohio-3195, ¶ 17 (2014), quoting *State v. Roof,* 1st Dist. Butler No. CA77–10–0110, 1978 WL 216430, * 1 (Nov. 8, 1978). Importantly, "A threshold level of 'physiological impairment' must be required before one can conclude that an 'injury' has occurred; otherwise, the definition of 'physical harm to persons' in R.C. 2901.01(A)(3) would be no different than the definition of 'force' as applied to persons in R.C. 2901.01(A)(1)."[4] *State v. Frunza*, 8th Dist. Cuyahoga No. 82053, 2003-Ohio-4809, ¶ 8; *State v. Fritts*, 11th Dist. Lake No. 2003-L-026, 2004-Ohio-3690, ¶ 18.

**{¶20}** In order to convict Sepulveda of Assault at trial, the State first called Sergeant Taylor of the Celina Police Department, who gave the following testimony related to the spitting incident giving rise to the Assault charge.

> **SERGEANT TAYLOR: After he was handcuffed, Sepulveda was pushing and pulling,[5] trying to turn away or towards us till we escorted him out to the front yard area, still continued to push and pull us.**

---

[4] To be even more specific related to the exact words, Black's Law dictionary defines "Impairment" as "The quality, state, or condition of being damaged, weakened, or diminished * * * a condition in which a part of a person's mind or body is damaged or does not work well, esp. when the condition amounts to a disability." *Black's Law Dictionary* (10th ed. 2014). "Physiological" is not defined in Black's Law Dictionary. Merriam-Webster's dictionary defines it as "characteristic of or appropriate to an organism's healthy or normal functioning."

[5] Sepulveda's pushing and pulling was part of his Resisting Arrest charge.

**Even at that point I heard him make like the hawker sound and turned his head and heard the spit noise, which would have been – I was on [Sepulveda's] left side, Patrolman Bartlett was on [Sepulveda's] right side. He turned his head to the right, towards Patrolman Bartlett and made a spit noise I overheard at that point.**

**We then placed [Sepulveda] \* \* \* stomach down on the ground until \* \* \* I went to the cruiser to get a spit hood because we didn't want him to spit on us any longer at that point.**

(Tr. at 60-61).

**{¶21}** Sergeant Taylor was then questioned specifically about filing the

Assault charge in the following dialogue with the prosecutor.

**Q [STATE]: All right. And I believe there was an assault charge filed as well?**

**A: Yes, sir.**

**Q: And what were the circumstances that led to that charge?**

**A: That would have been the spitting of his bodily fluid towards Patrolman Bartlett in an attempt to (inaudibles).**

**Q: All right.**

**A: The spit.**

**Q. From your vantage point, were you able to see any spit?**

**A: I did not see him spit, but I clearly heard him do the hawking noise and make the spit noise, which I would associate with him being spitting** [sic] **at someone or something?** [sic]

(Tr. at 62-63).

**{¶22}** Sergeant Taylor was further questioned about the spitting incident on cross-examination, leading to the following exchange between him and defense counsel.

> **Q:** You indicated you heard some hawker sound, spitting sound, but you didn't see any spitting as far as the spitting incident. Could you testify how far away the defendant was from Officer Bartlett when these noises occurred?
>
> **A:** Officer Bartlett was in physical contact with Mr. Sepulveda's right arm, so he was touching him. That's relatively close.
>
> **Q:** Okay. Do you know whether he made contact with the person of Officer Bartlett with the spittle?
>
> **A:** I recall asking Officer Bartlett if he had spit on him. I don't think that I saw it.
>
> **Q:** Okay. Okay. And the charge of this assault is based purely on the basis of this spit, is that right?
>
> **A:** Yes.
>
> **Q:** And assault involves physical harm or threat of physical harm, is that true?
>
> **A:** I believe it also involves attempted.
>
> **Q:** Attempted physical harm?
>
> **A:** Physical harm.
>
> **Q:** And what physical harm do you feel that the spit would, could have been to Officer Bartlett.
>
> **A:** Spitting in someone's face, eyes, or nose could cause – I have no idea what kind of ailments or, that [Sepulveda] has. It was serious enough I think it would be cause to try to harm someone.

Case No. 10-16-03

       \* \* \*

**Q:   Okay.  Was anyone actually injured by [Sepulveda]?**

**A:   No injuries were incurred by the officers.**

(Tr. at 74-75)

**{¶23}** Patrolman Bartlett was also questioned about the spitting incident that gave rise to the Assault charge.  On direct-examination, he provided the following testimony.

**A:   At that point then I heard him draw in for a hawker and then spit in my direction, near the area of my face.**

**Q:   Approximately how close was his face from yours at this time?**

**A:   We was very close.  I was on his right-hand side, just a little behind.  I had a hold of his arm with my left hand, so between here and here, where his arm was, so very close.**

**Q:   When you heard – you described as a hawking or inhaling from the spit, did you respond in any way?**

**A:   I tried getting out of the way, but I believe that he completely missed me, but I'm not 100 percent sure.  I didn't feel any go onto my eyes or onto my skin.**

**Q:   All right.  Were you concerned that it might?**

**A:   Yes.**

(Tr. at 81-82).

{¶24} Patrolman Bartlett was then asked specifically what the factual basis was for the Assault charge was on direct examination and, unfortunately, the transcript only presents us with "(Inaudibles)" as his answer. (Tr. at 84). None of Patrolman Bartlett's response to that question was apparently able to be transcribed.

{¶25} However, on cross-examination, Patrolman Bartlett was asked, "besides [the spitting], did [Sepulveda] make any effort * * * to assault you?" (Tr. at 91-92). Patrolman Bartlett responded, "I don't believe so except for the spitting." (*Id*. at 92).

{¶26} The preceding excerpts constitute the entirety of the testimony presented at trial related specifically to the Assault.[6] Based on this evidence, the trial court conducted the following analysis in open court, leading to the stated conclusion, after finding Sepulveda guilty of the other crimes alleged.

> **The assault was a little more complicated, but I didn't find that there was actual got hurt,** [sic] **but there certainly was an attempt. Spitting, I don't know if a guy would have meningitis, hepatitis, HIV. I don't know that he's got any of that, but you spit, you got bodily fluids, so I'm going to find him guilty basically beyond a reasonable doubt, each and every essential element proved on all charges.**

(Tr. at 108).

---

[6] The body camera footage was also entered into evidence. It was dark when the officers were removing Sepulveda from H.K.'s residence, so anything related specifically to the spit cannot really be seen. However, the "hawker" sound described by the officers does appear to be present in the audio.

-12-

**{¶27}** On appeal, Sepulveda argues that the trial court's conclusion is plain error as the evidence is insufficient to convict him of Assault. Sepulveda contends that without testimony establishing that the spit from Sepulveda harmed, or could have harmed, Patrolman Bartlett, the State did not satisfy its burden of proof.

**{¶28}** To support his argument Sepulveda directs us to two appellate cases wherein defendants had been convicted of Assault for spitting on a police officer and their convictions for Assault were reversed. *See State v. Bailey*, 83 Ohio App.3d 544 (2nd Dist.1992); *State v. Wyland* 8th Dist. Cuyahoga No. 94463, 2011-Ohio-455. Sepulveda notes, however, that this precise situation is one of first impression in *our* district. Nevertheless, he urges us to apply the reasoning and logic of the Second and Eighth District Courts of Appeal to this case.

**{¶29}** In *State v. Bailey*, 83 Ohio App.3d 544, the Second District Court of Appeals reversed a defendant's convictions for two violations of Dayton's assault ordinance where the defendant spit on the right arm of two officers. Dayton's assault ordinance was the same as R.C. 2903.13(A), reading, " 'no person shall knowingly cause or attempt to cause physical harm to another.' "[7] *Bailey* at 545.

**{¶30}** In *Bailey,* the defendant originally was charged with assault by causing physical harm to each police officer, but the charges were amended to an attempt to

---

[7] Dayton's ordinance also defined physical harm as " 'any injury illness, or other physiological impairment, regardless of its gravity or duration.' " Thus it is essentially identical to R.C. 2903.13(A) and the definition of physical harm in R.C. 2901.01.

cause physical harm to each officer.[8]  Bailey was convicted at the trial court level of attempting to harm each officer by spitting on them.  Bailey appealed his convictions to the Second District Court of Appeals, arguing, *inter alia*, that there was no evidence introduced proving that the victims could have been physically harmed by the spit.

{¶31} In *Bailey*, the Second District summarized the evidence presented, which included the testimony of one officer that he was angered and disgusted when Bailey spit on his arm.  The officer testified that he felt it was a health risk by being spit on by a "chronic drunk."  *Bailey* at 546.  However, the officer testified that he had "no pain, no immediate injury" and that he was not harmed that he was aware.  *Id*.  The second officer provided similar testimony, adding that he felt "contaminated," and that he considered being spit on harmful because he had to "wash up" and "take [his] clothes off and get them cleaned."  *Id*. 547.

{¶32} The Second District analyzed this evidence and determined the following.

> **As disclosed by the nature of the testimony of Sergeant Bardun and Officer Fisher, the evidence was clearly inadequate to prove that the officers suffered any immediate physical harm from the spitting, and this development undoubtedly prompted the trial court to amend the complaint.  However, even in the amended form, there is a dearth of evidence in the record to sustain the**

---

[8] Such an amendment did not change any statutory subsection, as Assault pursuant to both R.C. 2903.13(A) and Dayton's assault ordinance reads cause *or* attempt to cause physical harm.  The State was merely clarifying that it was asserting that Bailey had attempted to cause the officers physical harm instead of actually causing the officers physical harm.

> **charges. *In fact, no testimony, expert or otherwise, was presented to show that the sputum had any potential for bacterial or viral physical harm to the officers.***
>
> **Furthermore, the appellee failed to prove that Bailey acted "knowingly," as that term is defined for purposes of the assault ordinance. To the contrary, the record is devoid of any evidence that the appellant was aware that his conduct probably would cause injury, illness, or physiological impairment to the arresting officers.**
>
> **We agree with Sergeant Bardun that the acts of Bailey were disgusting, and his vile language and general conduct on August 3, 1991 were inexcusable. However, according to the evidence, the offenses he committed did not constitute either assault or attempted assault, and for this reason, the judgment must be reversed and the defendant discharged.**

(Emphasis added). *State v. Bailey*, 83 Ohio App.3d 544, 547 (2nd Dist.1992)

{¶33} In a similar factual situation to *Bailey*, and more closely analogous to the case *sub judice*, the Eighth District Court of Appeals came to the same conclusion as the Second District and reversed a defendant's conviction for Assault where the defendant actually spit in the face of a police officer. *State v. Wyland*, 8th Dist. Cuyahoga No. 94463, 2011-Ohio-455. In *Wyland*, the defendant was charged with two counts of Assault in violation of R.C. 2903.13(A) after he kicked a police officer and spit in the officer's face. Wyland challenged both of his convictions on appeal to the Eighth District. The Assault conviction related to kicking the officer was affirmed; however, the Assault conviction related to spitting in the officer's face was reversed.

{¶34} In *Wyland* the victim testified that the defendant spit in his face and after the defendant spit in his face he went to the hospital to get tested for communicable diseases, but the results came back negative. The State argued that since the officer sought medical care it was evidence of physical harm. The Eighth District did not agree with the State, finding that "being tested for harm as a result of being spit on does not amount to evidence of 'physical harm' as required under R.C. 2903.13(A)." *Wyland* at ¶ 30. Testing was not the same as treatment. The Eighth District further reasoned that there "was no evidence in the record that Officer Bishop suffered physical harm. Nothing in the record suggests that defendant's saliva was tainted, that it was tested, or that defendant carried or believed he carried a disease that could have been transferred" to the officer through bodily fluids. *Id*. at ¶ 31. The Eighth District thus reversed the defendant's conviction for Assault for *actually spitting in an officer's face*.

{¶35} Sepulveda now asks us to adopt a rationale similar to those expressed by the Second and Eighth District Courts of Appeal.

{¶36} The State attempts to counter the cases presented by Sepulveda by directing us to *State v. Weiss*, 4th Dist. Athens No. 09CA30, 2010-Ohio-4509, wherein the Fourth District Court of Appeals determined that there was sufficient evidence to convict a defendant of an Athens city ordinance comparable to R.C. 2903.13(A) where the defendant threw water balloons at people. The Fourth

District examined whether throwing water balloons could reasonably result in physical harm, and reasoned that it could, citing a number of older treatises containing language that "any offensive touching could constitute a battery[,]" and "the slightest physical harm is sufficient."[9] *Id.* at ¶ 24, ¶ 27.

{¶37} We note that *Weiss* was a 2-1 decision, and the dissent specifically stated that there was no testimony of any physical harm done. The dissent stated that there was evidence to show disorderly conduct, but not an attempted assault.[10] We would also like to emphasize that the older treatises quoted in *Weiss* speak of battery as any offensive touching, but they say little of R.C. 2903.13(A)'s requirement of physical harm.

{¶38} The legislative history to R.C. 2903.13(A) speaks to some of the treatise language cited in *Weiss*, stating, "This section prohibits simple assault and simple battery in the traditional sense." The "traditional sense" might lead a court to believe that "any offensive touching" thus constitutes an assault; however, it does not alleviate the State's burden of establishing the actual statutory element of physical harm in R.C. 2903.13(A). We must presume that the legislature

---

[9] *Weiss* quoted the following language from an 1857 treatise, which briefly mentions spitting: " 'A *battery* is more than an *attempt* to do a corporal hurt to another; but any injury whatsoever, be it ever so small, being actually done to the person of a man, in an angry or revengeful, or rude or insolent manner, such as spitting in his face, or in any way touching him in anger, or violently jostling him out of the way, is a battery in the eye of the law. For the law cannot draw the line between different degrees of violence, and, therefore, totally prohibits the first and lowest stage of it; every man's person being sacred, and no other having a right to meddle with it in any the slightest manner.' " *Weiss* at ¶ 25, quoting 1 Russell, A Treatise of Crimes and Misdemeanors (1857 8 Ed.) 751.

[10] We note that some courts have held, however, that disorderly conduct is not a lesser included offense of assault. *See State v. Conley*, 9th Dist. Summit No. 26704, 2013-Ohio-3347;

specifically selected the term "physical harm" over some form of "offensive touching" that had been more commonplace when the older treatises were written. Moreover, other Ohio Appellate Courts have required physical harm as the statute states, rather than simply requiring offensive touching. *See State v. Kemper*, 12th Dist. Butler No. CA2012-04-079, 2012-Ohio-5958, ¶¶ 20-21 (shoving someone, without evidence of injury or a clear showing of intent to do harm through shove insufficient to support conviction of assault).

**{¶39}** In our own review of the case, and the caselaw that exists on the topic, we cannot categorically find that spitting on someone would never constitute an Assault, and to the extent that either the *Bailey* or the *Wyland* decisions can be construed to be based on such a determination, we expressly decline to adopt them. In sum, there are a number of situations where it would seem possible that spitting on someone could constitute physical harm, or an attempt to cause physical harm, such as if the defendant did have a communicable disease like HIV or Hepatitis and knew about it, *see State v. Price*, 5th Dist. Fairfield No. 04CA24, 2005-Ohio-4150, ¶¶ 22-27, or if the defendant spit directly into an officer's eye, causing pain. However, we also believe that any such situation requires the testimony of someone familiar with the actual or potential harm to present that evidence to the trial court.

**{¶40}** Unfortunately, this particular record does not appear to contain any testimony establishing physical harm or an attempt to cause physical harm. First,

the officers explicitly denied any evidence of harm or any contact from the spit, so we are in the realm of "attempt to cause" physical harm in this instance. Second, neither police officer provided *any* testimony as to what kind of harm could have resulted or might have been intended from the spit had it connected with Patrolman Bartlett. The closest testimony that was provided was Sergeant Taylor testifying that he did not know what potential diseases Sepulveda had, but that if Sepulveda had some disease it could have harmed Patrolman Bartlett.

{¶41} Third, the State presented no testimony that Sepulveda's spit was tainted or of the potential harm his spit might have caused or been intended had it made contact. For example, there was no indication that Sepulveda was ever tested for any communicable disease that he could transfer to Patrolman Bartlett. Nor was there testimony that the spit could cause any physical pain.

{¶42} Moreover, the record is further diminished in this case by the fact that the transcript is missing key passages that could not be heard by the court reporter in creating the transcript submitted to this Court. During the questioning of the officers when they were *both* specifically asked about why the Assault charge was filed, the record contains "inaudible" segments, depriving us of potentially important testimony.

{¶43} Furthermore, our review of caselaw reveals no cases where a defendant has been convicted of Assault in violation of R.C. 2903.13(A) for simply

spitting upon an officer, or attempting to spit on an officer, without additional testimony that the spit could cause harm or did cause harm, no matter how slight. *See Correa v. Simone*, 528 Fed.Appx. 531, 536 (6th Cir.2013) (stating that "spitting on someone does not generally constitute assault in Ohio," absent some additional evidence). Cases *do* exist where a defendant has been convicted of Assault when he spit on someone *and* also struck that person physically. *State v. Skinner*, 7th Dist. Mahoning No. 05 MA 56, 2006-Ohio-3486, ¶ 12, 21 ("Appellant slapped McCauley in the face and spit on her face."). Defendants have also been convicted of Disorderly Conduct for spitting in another person's face. *See State v. Roberts*, 4th Dist. Washington No. 98CA21, 1999 WL 152128, *1 (Mar. 11, 1999). Defendants have even been convicted of Attempted *Felonious* Assault where it was shown that the defendant had HIV/Hepatitis, knew about it, and spit blood at an officer. *See State v. Price*, 5th Dist. Fairfield No. 04CA24, 2005-Ohio-4150, ¶¶ 20-27. Defendants have been convicted of Harassment by an Inmate in violation of R.C. 2921.38(A) if the defendant spits on someone while confined in a detention facility with intent to harass, annoy, threaten or alarm the other person. *See e.g., State v. Noble*, 9th Dist. Lorain No. 04CA008495, 2005-Ohio-600. However, the State has shown us no appellate caselaw to establish that mere attempted contact through spit, no matter how repugnant or offensive, constitutes "physical harm" without *some*

testimony from any of the witnesses that there was actual or potential harm rather than merely offense.

**{¶44}** Thus while Sepulveda's act may be repugnant, and we in no way condone it, we cannot find based on the specific facts of this case that he committed an Assault.[11] Sepulveda may have been guilty of some other crime when he spit at Patrolman Bartlett, but absent testimony of any potential consequences related to the physical harm, we are compelled to find that insufficient evidence was presented to convict Sepulveda of Assault. Therefore, Sepulveda's first assignment of error is sustained.

**{¶45}** Having found error prejudicial to Sepulveda in his sole assignment of error, the judgment of the Celina Municipal Court is reversed, and this case is remanded to discharge Sepulveda on the Assault charge.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**

---

[11] We would note that while the State did not attempt to elevate Sepulveda's assault, R.C. 2903.13(C)(5) actually makes Assault a felony of the fourth degree if it is charged and specified that the victim of the Assault is a peace officer acting in the performance of his or her duty. So if we adopted the State's position that simply spitting in the direction of the officer is an assault without evidence of harm, it is not only an Assault, but a felony of the fourth degree.