[Cite as *Columbus Pros. Office v. J.M.*, 2023-Ohio-3555.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus Prosecutors Office, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 22AP-467 |
| v. | : | (M.C. No. 2021CRB-017538) |
| [J.M.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 29, 2023

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias-Hunter*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Leon J. Sinoff*, for appellant. **Argued:** *Leon J. Sinoff.*

APPEAL from the Franklin County Municipal Court

DORRIAN, J.

{¶ 1} Defendant-appellant, J.M.,[1] appeals from a sentence entry issued by the Franklin County Municipal Court following a bench trial finding her guilty of domestic violence and assault. Because the sentence entry is a final, appealable order in this case and, upon review of the merits, the trial court erred in conducting a bench trial without first obtaining, in open court, a valid waiver of J.M.'s right to a jury trial, we reverse the trial court judgment.

---

[1] The names of individuals other than law enforcement officers have been initialized to protect the identity of the victim. *Columbus v. C.G.*, 10th Dist. No. 19AP-121, 2021-Ohio-71, ¶ 1, fn 1.

## I.  Facts and Procedural History

{¶ 2}   J.M. was charged with assault, pursuant to R.C. 2903.13(A), and domestic violence, pursuant to R.C. 2919.25(A), stemming from an incident at Nationwide Children's Hospital on December 5, 2021 whereby J.M. allegedly struck her minor daughter, T.W., with her fist.  J.M. entered a plea of not guilty on December 6, 2021 along with a written request for a jury trial.

{¶ 3}   On February 17, 2022, J.M. signed a document entitled "Advice Of Rights And Waiver Of Trial by Jury" whereby J.M. agreed, "I have been advised of and understand the information [concerning, in part, her right to have a trial by jury], and I knowingly waive my right to a jury trial and consent to this case being heard by the Court." (Feb. 17, 2022 Waiver at 1.)  The trial court judge and either J.M.'s attorney or a witness also signed the document.

{¶ 4}   The trial court held a bench trial on March 21, 2022 with J.M. present and represented by defense counsel.  The trial court did not reference or discuss, in open court, the waiver of J.M.'s right to a jury trial.  During the bench trial, two witnesses testified: Officer Roscoe Blackburn on behalf of the City of Columbus Prosecutor's Office, plaintiff-appellee, and J.M. on her own behalf.  A DVD containing video footage of the incident captured on Officer Blackburn's body-worn camera was admitted into evidence without objection.

{¶ 5}   Officer Blackburn testified to being dispatched to Nationwide Children's Hospital around 4:30 p.m. on December 5, 2021 to meet with T.W. concerning a warrant, with a plan in place to take T.W. into his custody and then release her to J.M. at the hospital reception center.  According to Officer Blackburn, when he and another officer initially made contact with T.W. in her hospital room he did not observe any physical injury to T.W.  The officers then waited outside the hospital room and were introduced to J.M.  Eventually, J.M. proceeded toward T.W.'s hospital room.  Officer Blackburn observed T.W. come out of the hospital room and grab another woman, who he described as "her friend," from the hallway and pull her back into the room.  (Mar. 21, 2022 Tr. at 13.)  According to Officer Blackburn, J.M. "raised her right fist and started hitting [T.W.]." (Mar. 21, 2022 Tr. at 13.) Officer Blackburn and his partner ran toward the room, Officer Blackburn stepped in

between J.M. and T.W., and his partner held J.M.  Officer Blackburn reiterated he witnessed J.M.'s fist make contact with T.W. specifically—not the friend—and described J.M.'s first strike, right at the doorway to the hospital room, connecting with T.W.'s "shoulder, upper back region." (Mar. 21, 2022 Tr. at 13.)  Officer Blackburn testified he observed physical injury to T.W. after the incident and said she had "a bloody bottom lip." (Mar. 21, 2022 Tr. at 14.)  According to Officer Blackburn, the friend was not involved in the altercation between J.M. and T.W.

{¶ 6}  The video of the incident captured on Officer Blackburn's body camera, played for the court, shows T.W., in a red sweatshirt and dark pants, pull a woman in a light grey t-shirt and white pants into a hospital room, and J.M., in a dark green sweater and dark pants and boots, enter the room after them swinging her arms.  Once in the room, the video shows J.M. facing T.W. while swinging her arms and fists directly at T.W.  Once the women are separated by officers, T.W. is shown crying and asking to not go home with J.M. since J.M. hit her.  The woman in light grey is visible to the left side of the room by a chair.

{¶ 7}  On cross-examination, J.M.'s attorney questioned Officer Blackburn regarding the possibility that the friend, who was alleged to be the mother of T.W.'s boyfriend and who T.W. lived with when she ran away from home, was J.M.'s target and that T.W. may have been trying to break up a fight between J.M. and the friend.  Officer Blackburn reiterated his testimony that he saw J.M. swing and make contact with T.W. directly and that the friend was not involved in the altercation in the hospital room.

{¶ 8}  The city rested its case, and J.M. testified in her own defense.  J.M. explained she had previously filed "interfering with custody" charges on the friend and "unruly" charges on T.W. and that the warrant on T.W. stemmed from the judge ordering T.W. to go home to J.M. and resume medication for bi-polar disorder.  (Mar. 21, 2022 Tr. at 43.)  According to J.M., during the incident in the hospital, she was angry with the friend for remaining at the hospital when J.M. had been assured the friend would leave the premises. J.M. testified she swung her fists at the friend—not T.W.—and that T.W. interjected herself and swung back at J.M.  "I punched at [the friend]. [T.W.] then punched me, and then that's when the altercation between [T.W.] and I started."  (Mar. 21, 2022 Tr. at 46.)  J.M. remembered hitting the friend but not T.W.  According to J.M., even the officers were confused as to who the victim was—T.W. or the friend.

{¶ 9}    After the witnesses testified and the parties made closing arguments, the judge immediately ruled, finding J.M. guilty of assault, pursuant to R.C. 2903.13(A), and domestic violence pursuant to R.C. 2919.25(A).  The trial court ordered a pre-sentence investigation and sentencing occurred July 7, 2022.  The trial court sentenced J.M. to "**30** total days in [Franklin County Correction Center]. Credit of **2** days for time served" with the remaining 28 days suspended "for one year community control." (Emphasis sic.) (July 28, 2022 Sentence Entry at 1; July 7, 2022 Tr. at 5-6.)  The parties and the trial court did not discuss merger of the offenses for purposes of sentencing during the sentencing hearing and merger was not reflected in the judgment entry.

{¶ 10}  On July 28, 2022, J.M. filed an appeal challenging her convictions.  The city moved this court to dismiss the appeal, asserting the sentencing entry in this case failed to constitute a final, appealable order under Crim.R. 32(C) and other district appellate court cases since the trial court imposed a single sentence on two offenses.  J.M. opposed the motion to dismiss, contending that because the sentence entry in this case contains the fact of conviction, the sentence, the judge's signature, and the clerk's stamp, it is a final, appealable order under Crim.R. 32(C).  On April 14, 2023, this court filed an entry indicating the motion to dismiss would be resolved at the same time we address the merits of the appeal.

## II.  Final, Appealable Order Issue

{¶ 11}  The Ohio Constitution limits the jurisdiction of courts of appeal to the review of final orders.  Article IV, Section 3(B)(2) of the Ohio Constitution.  The constitutional grant of jurisdiction is codified in R.C. 2953.02, stating that in criminal cases, "the judgment or final order of a court of record inferior to the court of appeals may be reviewed in the court of appeals."  R.C. 2953.02.

{¶ 12}  R.C. 2505.02 defines a final order.  *Huntington Natl. Bank v. Lewis*, 10th Dist. No. 05AP-1213, 2006-Ohio-2267, ¶ 4.  Relevant to the issue here, an order is final when it " 'affects a substantial right in an action that in effect determines the action and prevents a judgment.' " *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, ¶ 12, quoting R.C. 2505.02(B)(1).

{¶ 13}  A judgment of conviction in a criminal case that "reflects the four substantive provisions" of Crim.R. 32(C) as enumerated in *State v. Lester*, 130 Ohio St.3d 303, 2011-

Ohio-5204, ¶ 14, is considered final and subject to appeal under R.C. 2505.02. Staff notes to July 1, 2013 Amendment to Crim.R. 32. Crim.R. 32(C) states:

> A judgment of conviction shall set forth the fact of conviction and the sentence. Multiple judgments of conviction may be addressed in one judgment entry. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk.

In *Lester*, the Supreme Court of Ohio considered Crim.R. 32(C) and held, "a judgment of conviction is a final order * * * when the judgment entry sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Lester* at ¶ 14.

{¶ 14} "[A] valid judgment of conviction requires a full resolution of any counts for which there were convictions." *State v. Jackson*, 151 Ohio St.3d 239, 2017-Ohio-7469, ¶ 11. *See Craig* at 404 (holding that a conviction on one count of a multi-count indictment is not a final, appealable order when other counts remain pending after a mistrial); *State v. Monroe*, 10th Dist. No. 13AP-598, 2015-Ohio-844, ¶ 31 (determining a final, appealable order existed after finding, among other issues, that it was "clear from the amended judgment entry that the trial court disposed of each of the counts"); *State v. Crago*, 10th Dist. No. 18AP-857, 2020-Ohio-887, ¶ 11-12 (discussing the necessity of the trial court to sentence the defendant on "each and every offense" for which there is a conviction and applying that rule to a fact pattern with a "hanging" or missing charge that was not dismissed or otherwise settled). Moreover, "[a]s a general matter, '[o]nly one document can constitute a final appealable order,' meaning that a single entry must satisfy the requirements of Crim.R. 32(C)." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 39, quoting *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, ¶ 17.

{¶ 15} "[T]he purpose of Crim.R. 32(C) is to ensure that a defendant is on notice concerning when a final judgment has been entered and the time for filing an appeal has begun to run." *Lester* at ¶ 10. Thus, "[f]or [a defendant] to be able to appeal his conviction, the trial court must first issue a judgment of conviction that clearly and explicitly meets the requirements of [*Lester*]." *State v. White*, 156 Ohio St.3d 536, 2019-Ohio-1215, ¶ 2.

{¶ 16} In this case, the city's motion to dismiss centers on the meaning of the second substantive requirement of Crim.R. 32(C): the sentence. Specifically, the city asserts the sentence entry appealed by J.M. finds her guilty of two offenses but appears to impose only a single sentence and, therefore, does not constitute a final, appealable order under Crim.R. 32(C) and other district appellate court cases since "[i]t cannot be determined to which offense the sentence applies." (Mar. 24, 2023 Mot. to Dismiss at 2.) J.M. counters that because the sentence entry in this case meets the requirements stated in Crim.R. 32(C) and *Lester*—it contains the fact of conviction, the sentence, the judge's signature, and the clerk's stamp—it is a final, appealable order.

{¶ 17} The parties are essentially at odds over whether what appears to be an improperly imposed "omnibus"[2] sentence by the trial court fails to meet the Crim.R. 32(C) "sentence" requirement, thereby rendering the entry not final and appealable. It is undisputed that, under Ohio law, a trial court errs by imposing an omnibus sentence for a group of offenses. *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 9. Whether the trial court's error in imposing an omnibus sentence deprives that entry of the finality necessary to invoke the jurisdiction of an appellate court has not been directly considered by this court.

{¶ 18} Tenth District precedent does, however, provide indirect support in favor of exercising jurisdiction over this appeal. In *State v. Simpson*, 10th Dist. No. 19AP-866, 2020-Ohio-6840, ¶ 17-20, we determined a trial court's imposition of a sentence package did not render the original judgment "void" and instead was "voidable" under recent Supreme Court precedent.[3] In doing so, we commented that the appellant had already been "provided a full and fair opportunity for review [of the package sentence issue] on direct appeal" and, because he failed to pursue the issue on direct appeal, res judicata applied to bar his later challenges on that issue. *Id.* at ¶ 20. *See also State v. Thomas*, 6th Dist. No. L-20-1099, 2021-Ohio-2792, ¶ 13 (holding trial court's error in imposing a blanket sentence on multiple convictions was a voidable error that the defendant could have raised on direct

---

[2] Described as "one, overarching" sentence and also referred to as a "packaged," "lump," "bundle[d]," or "collective" sentence. *State v.* Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 9, 15; *State v. Wheatley*, 4th Dist. No. 17CA3, 2018-Ohio-464, ¶ 46, fn. 9.
[3] *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913; *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784.

appeal); *State v. Hedges*, 11th Dist. No. 2019-L-135, 2020-Ohio-4528, ¶ 12 (holding "the imposition of a sentencing package to be a voidable error, and not void" under recent Supreme Court precedent and, therefore, one the appellant was required to challenge on direct appeal).

{¶ 19} Appellate courts directly addressing whether an omnibus sentence is a final, appealable order vary in result, largely based on the particular court's view regarding whether a single, lump sentence disposes of each individual offense.[4] *Compare State v. O'Black*, 3d Dist. No. 1-09-46, 2010-Ohio-192, ¶ 6-7 (judgment entry imposing omnibus sentence is not a final, appealable order); *State v. Jones*, 8th Dist. No. 102314, 2015-Ohio-2409, ¶ 6-16[5] (trial court order imposing omnibus sentence is not a final, appealable order); *State v. Washington*, 11th Dist. No. 2021-P-0026, 2021-Ohio-3883, ¶ 4 (trial court entry imposing omnibus sentence is not a final, appealable order—despite its prior ruling in *Hedges*); *with State v. Wheatley*, 4th Dist. No. 17CA3, 2018-Ohio-464, ¶ 46, fn. 9 (trial court order imposing omnibus sentence is a final, appealable order); *State v. Pari*, 9th Dist. No. 28098, 2017-Ohio-4165, ¶ 32-40 (trial court order imposing omnibus sentence is a final, appealable order).

{¶ 20} Here, considering R.C. 2505.02(B), the purpose of Crim.R. 32(C), the body of case law implicating omnibus sentences, and the parties' arguments, we agree with J.M. that the sentence entry she appealed constitutes a final, appealable order. In line with *Lester* and Crim.R. 32(C), the sentence entry, in one document, sets forth the fact of the

---

[4] We note that some of the appellate courts considering this issue also found the Supreme Court's judgments in *State v. South*, 120 Ohio St.3d 358, 2008-Ohio-6693, and *State v. Goldsberry*, 120 Ohio St.3d 275, 2008-Ohio-6103, to be instructive. In *South* and *Goldsberry*, the court summarily reversed, without decision, a Third District judgment that had determined it lacked jurisdiction to hear an appeal where the trial court originally sentenced the defendant to a single term of community control for multiple offenses. However, in those cases, the defendants had violated community control, and the defendants' appeals arose from the trial court judgment sentencing the defendants following the community control violation. Generally, "[a]n order revoking community control and imposing a sentence is a final, appealable order because the order is a made in a special proceeding and affects a substantial right" pursuant to R.C. 2505.02(B)(2). *State v. Browning*, 10th Dist. No. 20AP-566 (July 8, 2021), citing *State v. Nichter*, 10th Dist. No. 18AP-230, 2019-Ohio-279, ¶ 24. Therefore, because *South* and *Goldsberry* implicate a different final, appealable order issue, and the Supreme Court declined to issue a decision explaining its reasoning, we find those cases to not be dispositive to the issue here and to hold little value to resolving the instant case.

[5] The city also cited to the Eighth District case *State v. Ocasio*, 8th Dist. No. 103972, 2017-Ohio-88, in support of its motion to dismiss. However, since *Ocasio* involved a fact pattern in which the trial court sentenced certain offenses individually but failed to impose a sentence on other charges—rather than a fact pattern in which the trial court appears to impose a single sentence on multiple offenses—we find *Ocasio* distinguishable and *Jones* to be a better comparison example from the Eighth District.

conviction, the sentence, the judge's signature, and the time stamp indicating the entry upon the journal by the clerk. *Lester* at ¶ 14, citing Crim.R. 32(C). While the trial court may have erred in attempting to impose a single, lump sentence on multiple offenses, that error may be challenged on direct appeal and is not a jurisdictional barrier to institute an appeal from that sentence entry. *See Simpson* at ¶ 17-20; *Wheatley* at ¶ 46; *Pari* at ¶ 32-40; and *Thomas* at ¶ 13. The sentence entry in this case was sufficient to put J.M. on notice that the time for filing an appeal had begun to run. *Lester* at ¶ 10. J.M. did in fact file a timely appeal.

{¶ 21} Considering all the above, this court has jurisdiction to review J.M.'s appeal. Accordingly, the city's motion to dismiss lacks merit and is denied.

### III. Assignments of Error

{¶ 22} J.M. assigns the following five assignments of error for our review:

> [I.] Appellant's Right to Trial By Jury Was Violated When the Trial Court Conducted a Bench Trial Without Obtaining a Valid Waiver of the Right to Jury Trial.
>
> [II.] Appellant Was Denied The Effective Assistance of Counsel at Trial.
>
> [III.] There Was Insufficient Evidence as to the Essential Element of "Physical Harm," So Appellant Should Not Have Been Found Guilty of Either Charge.
>
> [IV.] The Manifest Weight of the Evidence Favored Appellant's Acquittal.
>
> [V.] Appellant Was Impermissibly Convicted of Multiple Offenses for the Same Conduct, in Violation of Jurisprudence on Allied Offenses of Similar Import and Constitutional Double Jeopardy.

### IV. Analysis

### A. Right to a jury trial

{¶ 23} In her first assignment of error, J.M. contends her right to a trial by jury was violated since the trial court failed to obtain a valid waiver prior to holding the bench trial. Specifically, J.M. argues the trial court did not ascertain, in open court, whether J.M. had knowingly, voluntarily, and intelligently waived her right to a trial by jury. As a result, J.M.

contends her convictions must be reversed and a new trial ordered. The city agrees that J.M. has a right to be tried by a jury in this case due to the "jailable offenses" involved, that J.M. timely filed a written demand for a jury trial, and that the trial court failed to obtain J.M.'s waiver in open court. (City's Brief at 13.) The city likewise agrees this error requires J.M.'s convictions be reversed and the case remanded for a new trial. Upon review of the applicable law, we agree with the parties that the trial court erred by conducting a bench trial without first properly securing J.M.'s waiver of her right to a jury trial.

{¶ 24} A defendant charged with a misdemeanor that carries a potential jail or prison term has a right to be tried to a jury. R.C. 2945.17; Ohio Constitution, Article I, Sections 5 and 10; Sixth Amendment to the United States Constitution; *State v. Baghdady*, 10th Dist. No. 05AP-142, 2005-Ohio-5092, ¶ 5 ("[B]oth Section 10, Article I, Ohio Constitution and R.C. 2945.17 provide defendant with a right to be tried by a jury.").

{¶ 25} Because this case involves first-degree misdemeanor "petty offenses,"[6] J.M. was required to demand her right to a jury trial in writing. Crim.R. 23(A) ("[i]n petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless [s]he demands a jury trial"; the demand must be "in writing and filed with the clerk of court" within a specified time).

{¶ 26} After the Crim.R. 23(A) demand is made, the defendant may still waive a trial by jury and be tried by the court without a jury. Pursuant to R.C. 2945.05, "[s]uch waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof" and "must be made in open court after the defendant has been arraigned and has had [an] opportunity to consult with counsel." "The Supreme Court of Ohio has determined that R.C. 2945.05 requires that five conditions be met in order for a waiver to be validly entered. The waiver must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *State v. Webb*, 10th Dist. No. 10AP-289, 2010-Ohio-6122, ¶ 23, citing *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 9.

---

[6] Pursuant to Crim.R. 2(D), a "petty offense" is defined as "a misdemeanor other than a serious offense." Crim.R. 2(C) defines a "serious offense" as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for *more than* six months." (Emphasis added.) Here, J.M. was charged with assault and domestic violence as first-degree misdemeanors, which are punishable by a maximum of 180 days confinement. R.C. 2903.13(A); 2919.25(A); and 2929.24(A)(1). Thus, pursuant to Crim.R. 2, J.M. was charged with petty offenses. *State v. Gainer*, 10th Dist. No. 22AP-587, 2023-Ohio-1760, ¶ 8.

{¶ 27} Regarding the "open court" requirement, "there must be an oral acknowledgment by the accused, in open court, that he or she wishes to waive the right to a jury trial in order to comply with the requirements of R.C. 2945.05 and for the jury waiver to be valid." *State v. Banks*, 10th Dist. No. 18AP-808, 2019-Ohio-5440, ¶ 25. *State v. Brinkman*, 169 Ohio St.3d 127, 2022-Ohio-2550, ¶ 31 (determining the trial court strictly complied with R.C. 2945.05 where the court addressed the defendant's request to waive his right to a jury in open court, verified that he had knowingly, intelligently, and voluntarily signed the jury waiver, and filed the signed waiver with the clerk). "A jury '[w]aiver may not be presumed from a silent record.' " *Banks*, quoting *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 45.

{¶ 28} The trial court must strictly comply with the requirements of R.C. 2945.05. *State v. Pless*, 74 Ohio St.3d 333, 339 (1996). "Where the requirements of R.C. 2945.05 are not met, the court's exercise of jurisdiction is in error," rendering the judgment "voidable, not void ab initio[,]" and the defendant must challenge the trial court's failure to comply with R.C. 2945.05 on direct appeal. *Columbus v. Memon*, 10th Dist. No. 09AP-38, 2009-Ohio-5124, ¶ 8, 12, *appeal not accepted*, 124 Ohio St.3d 1475, 2010-Ohio-354. *See Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 26 (clarifying that the statement in *Pless*, "a trial court lacks jurisdiction" to try a defendant without a jury absent strict compliance with R.C. 2945.05 "was not about the lack of subject-matter jurisdiction but instead involved error in the court's exercise of its jurisdiction").

{¶ 29} Here, J.M. sufficiently demanded a trial by jury pursuant to Crim.R. 23(A) by submitting the signed jury request on December 6, 2021. While J.M. then signed and filed a written waiver of her right to a jury trial, the waiver was not made "in open court" as required by R.C. 2945.05. The transcript does not contain any reference to the written waiver of jury trial on the charges or otherwise show the trial court personally addressed J.M. in open court about whether she wished to waive her right to a jury trial on the charges. The city concedes this error.

{¶ 30} Because the trial court failed to strictly comply with R.C. 2945.05, its decision to proceed with the bench trial was in error, and, as a result, the judgment must be reversed and convictions vacated. *Banks* at ¶ 31. Accordingly, J.M.'s first assignment of error is sustained.

## B. Second, fourth, and fifth assignments of error are moot

{¶ 31} In J.M.'s second assignment of error, she asserts she was denied the effective assistance of counsel during the bench trial. In her fourth assignment of error, J.M. contends her convictions were against the manifest weight of the evidence. Her fifth assignment of error asserts the trial court erred in convicting her of multiple offenses for the same conduct in violation of the law surrounding allied offenses of similar import. In addressing the first assignment of error, we found the bench trial to be an erroneous exercise of the trial court's jurisdiction and that the judgment of conviction must be reversed. As a result, the issues raised by J.M. in her second, fourth, and fifth assignments of error, which are based upon the bench trial and the resulting judgment, are no longer live. *See State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court."); *State v. Solt*, 10th Dist. No. 22AP-419, 2023-Ohio-2779, ¶ 20, and cases cited therein (holding that manifest-weight challenge was rendered moot by conclusion that trial court erred in exercising its jurisdiction by conducting a bench trial without obtaining valid waiver); App.R. 12(A)(1)(c) ("[u]nless an assignment of error is made moot by a ruling on another assignment of error," a court of appeals shall "decide each assignment of error and give reasons in writing for its decision"). Accordingly, we dismiss as moot J.M.'s second, fourth, and fifth assignments of error.

## C. Sufficiency of the evidence

{¶ 32} In her third assignment of error, J.M. challenges the sufficiency of the evidence as to "physical harm" to support both the assault and the domestic violence charges. Unlike her ineffective assistance of counsel, manifest weight, and allied offenses challenges, J.M.'s sufficiency of the evidence claim is not rendered moot by our conclusion that the trial court erred by conducting a bench trial. As we recently explained in *Solt*:

> "[W]hen an appellate court reverses for insufficiency of the evidence, the Double Jeopardy Clause bars retrial." *Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, ¶ 10. Therefore, because the result may prevent a retrial, "[a]n assignment of error challenging the sufficiency of the evidence is potentially dispositive of a defendant's conviction and may not be rendered moot by a remand on any other assignment of error." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 2. *See* [*Cleveland v. Krebs*, 8th Dist. No. 105814, 2018-Ohio-

746] ¶ 25 ("Although we vacated Krebs's failure to comply conviction and remanded for a new trial [due to lack of a signed, written jury waiver], we must still address the sufficiency of the evidence argument due to double jeopardy concerns."); *State v. Riggins*, 9th Dist. No. 28080, 2017-Ohio-80, ¶ 10, fn. 1 (noting that sufficiency challenge was not rendered moot despite conclusion that trial court erred by conducting bench trial without a written jury waiver).

*Solt* at ¶ 21.

**{¶ 33}** " ' "[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* at 386. "Retrial is barred if a reversal is based upon a finding that the evidence was legally insufficient to support the conviction." *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, ¶ 23.

**{¶ 34}** When an appellate court reviews the sufficiency of the evidence for a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *McFarland* at ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. A verdict will not be disturbed unless, viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Aekins*, 10th Dist. No. 21AP-630, 2023-Ohio-322, ¶ 71, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386.

**{¶ 35}** In this case, J.M. was charged with assault, pursuant to R.C. 2903.13(A), which states, in pertinent part, "[n]o person shall knowingly cause or attempt to cause physical harm to another" and domestic violence pursuant to R.C. 2919.25(A), which states, in pertinent part, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." As defined by statute, "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain

result or will probably be of a certain nature." R.C. 2901.22(B). Moreover, "physical harm" in this context means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 36} J.M. argues that, even assuming Officer Blackburn's testimony that he saw J.M. strike T.W. is true and accurate, the city nevertheless failed to introduce proof beyond a reasonable doubt that J.M. caused physical harm to T.W. since the city never showed T.W. endured a "physiological impairment." (Appellant's Brief at 33.) J.M. argues Officer Blackburn admitted he did not know if J.M. caused the bloody lip, which J.M. asserts is the only evidence presented as to physical harm. J.M., citing to *State v. Sepulveda*, 3d Dist. No. 10-16-03, 2016-Ohio-7177, further argues the city failed to present evidence that J.M. attempted to cause physical harm to T.W.

{¶ 37} We disagree. Generally, evidence that a person exhibited fresh signs of physical injury after being punched or hit by a defendant is sufficient to establish the physical harm element of domestic violence or assault. *See, e.g.*, *State v. Houston*, 10th Dist. No. 16AP-157, 2017-Ohio-1122, ¶ 20 (sufficient evidence supported domestic violence conviction where victim testified the defendant jumped on her during an argument and hit her in the head and face with a fist and photographs depicted injuries, including a black eye).

{¶ 38} Furthermore, "impact is not required for an assault conviction." *State v. Smith*, 10th Dist. No. 08AP-736, 2009-Ohio-2166, ¶ 38. Even where punches do not connect, knowingly swinging one's hand at another person in order to hit that person constitutes an attempt to cause physical harm. *Smith* at ¶ 37-38 (holding that taking a swing at an officer constituted attempted physical harm where the circumstance showed the defendant acted knowingly, *i.e.*, that he was aware that his swinging at the officer would probably result in hitting and injuring the officer).

{¶ 39} *Sepulveda*, cited by J.M., is distinguishable. In that case, the Third District Court of Appeals held that the act of spitting was not an attempt to cause physical harm to officers where the officers explicitly denied any evidence of harm or any contact from the spit and the record did not contain any testimony establishing physical harm or an attempt to cause physical harm. As the Third District itself later remarked, "[t]he act of spitting is very different from the act of punching someone." *State v. Roesener*, 3d Dist. No. 14-21-

26, 2022-Ohio-1901, ¶ 9 (determining, after "[v]iewing the evidence in a light most favorable to the [s]tate, a reasonable person could foresee that striking another person with a closed fist may result in pain" and, therefore, the state presented sufficient evidence to support a domestic violence conviction).

{¶ 40} In this case, the responding officer testified he did not observe T.W. with any physical injuries prior to the incident, that J.M. swung at T.W. with her fist and made contact with T.W., that he and his partner had to break up the physical confrontation between J.M. and T.W., and that after the incident T.W. had a bloody bottom lip. J.M. admitted that she did have an "altercation" with T.W. in the hospital room. (Mar. 21, 2022 Tr. at 46.) The video footage shows J.M. swinging at T.W. in the hospital room while they were facing each other, and T.W. crying after the incident and stating J.M. had hit her and that she did not want to go home with her.

{¶ 41} After viewing the evidence in a light most favorable to the city, a rational trier of fact could have found, beyond a reasonable doubt, that J.M. knowingly caused or attempted to cause physical harm to T.W. *McFarland* at ¶ 24; *Jenks* at paragraph two of the syllabus. Accordingly, J.M.'s third assignment of error challenging the sufficiency of the evidence to support her convictions lacks merit and is overruled.

## V. Conclusion

{¶ 42} For the foregoing reasons, we sustain J.M.'s first assignment of error, overrule her third assignment of error, and render moot her second, fourth, and fifth assignments of error. Having concluded the trial court erred in exercising its jurisdiction by conducting a bench trial without a valid waiver of J.M.'s right to a jury trial in open court, we reverse the judgment of the Franklin County Municipal Court and remand the matter to that court to vacate the judgment entry of conviction and sentence.

*Motion to dismiss denied;*
*judgment reversed; cause remanded.*

BEATTY BLUNT, P.J., concurs.
JAMISON, J., concurs in part and dissents in part.

JAMISON, J., concurring in part and dissenting in part.

{¶ 43} I agree with the majority's conclusion under the first assignment of error that the trial court improperly exercised its jurisdiction by failing to strictly comply with R.C.

2945.05 and, as a result, J.M.'s second, fourth, and fifth assignments of error are moot. (Majority Decision at ¶ 26-31, citing *State v. Webb*, 10th Dist. No. 10AP-289, 2010-Ohio-6122, ¶ 23, citing *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 9.) However, contrary to the majority decision, I would not proceed to review the sufficiency of the evidence under the third assignment of error based on evidence procured from a hearing that the majority has found was an invalid proceeding and when doing so will result in prejudice to J.M. on remand. Accordingly, I respectfully dissent.

{¶ 44} First, I would not follow *State v. Solt*, 10th Dist. No. 22AP-419, 2023-Ohio-2779, ¶ 21, as I believe it creates a legal conundrum. The constitutional right underlying *Solt* and the instant case is the right to a jury trial afforded to defendants under the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution. As discussed in the majority decision at ¶ 28, a trial court that violates the safeguards of the constitutional right to a jury trial codified in R.C. 2945.05 lacks jurisdiction to conduct a bench trial. *State v. Pless*, 74 Ohio St.3d 333 (1996), paragraph one of the syllabus ("Absent strict compliance with the requirements of R.C. 2945.05, a trial court lack[s] jurisdiction to try the defendant without a jury.").

{¶ 45} In my view, a trial court that conducts a bench trial without jurisdiction to do so results in structural error since it "affects the framework in which the trial is conducted, rather than simply being an error in the trial process itself" and interferes with a defendant's "fundamental right to conduct [her] own defense and direct the manner in which [s]he protects [her] own liberty." *State v. Montgomery*, 169 Ohio St.3d 84, 2022-Ohio-2211, ¶ 27. Significantly, a structural error "renders a trial an unreliable vehicle for determining guilt or innocence." *Id*. at ¶ 32. Here, using evidence garnered during a bench trial where the court has improperly exercised jurisdiction does not serve as a reliable or fair basis for determining J.M.'s fate. The remedy for a structural error is a new trial. *Id*. at ¶ 1.

{¶ 46} The legal precedent relied on by *Solt* to hold otherwise—*Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, ¶ 10, and *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 2—are readily distinguishable as they do not involve the trial court's improper exercise of jurisdiction. *See Girard* (considering issue of trial court's failure to comply with the "explanation-of-circumstances" requirement in R.C. 2927.07 for taking a no-contest plea with no issue concerning the trial court's improper exercise

of jurisdiction); *Gideon* (considering doctor's right to remain silent with no issue concerning the trial court's improper exercise of jurisdiction). As a result, *Giordano* and *Gideon* should not control the outcome here.

{¶ 47} Moreover, to the extent *Girard*, *Gideon*, and *Solt* support the majority decision's conclusion that a sufficiency of the evidence assignment of error is not rendered moot by a defective jury waiver, these cases fail to account for the prejudice that will result in the trial court proceedings on remand. Specifically, appellate courts that proceed to review the sufficiency of the evidence despite the trial court's improper exercise of jurisdiction are in essence issuing advisory opinions that prejudice the defendant's ability to plea bargain and/or have a fair and impartial new trial. I believe the prejudice to the defendant flowing from an appellate court's premature determination regarding the sufficiency of the evidence prior to the new trial outweighs the prejudice arising from the mere possibility for acquittal if such a review is permitted.

{¶ 48} With these considerations in mind, I would sustain J.M.'s first assignment of error concerning the lack of written jury waiver and determine that resolution of the first assignment of error renders the second, fourth, and fifth assignments of error moot. Unlike the majority decision, I would refuse to review the sufficiency of the evidence in the third assignment of error at this juncture as premature and not ripe for consideration. Moreover, I would reverse the judgment of the trial court and remand the matter for the trial court to not only vacate the judgment entry of conviction and sentence, but to hold a new trial. Because the majority decision concludes otherwise, I respectfully concur in part and dissent in part.

_____